Solis-Cohen, Appellant, *v.* Phoenix Mutual
Life Insurance Company.

Argued November 14, 1963.   Before BELL, C. J.,
MUSMANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

634

*Charles M. Solomon,* with him *Bernard L. Frankel,* and *Fox, Rothschild, O'Brien and Frankel,* for appellant.

*John P. Mason,* with him *Dechert, Price & Rhoads,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 17, 1964:

This is an appeal from the judgment of the court below denying appellant, a real estate broker, recovery of commissions he alleges were earned by him as agent for appellee.

Appellee, Phoenix Mutual Life Insurance Company (Phoenix), owns a building at 1007-11 Market Street in Philadelphia. Appellant as agent for appellee's prime tenant, the John Irving Shoe Co. (Shoe Co.), obtained renewals of two pre-existing subleases and secured two new subtenants for the premises. As compensation for these services and for the collection of rents and management of the premises, appellant retained 5% of the rents he collected. In addition, appellant was to receive from Shoe Co., in the event of the termination of his agency, a percentage of the rents yet to be collected on the unexpired leases.

In 1961 Shoe Co. suffered financial difficulties and was reorganized under Chapter XI of the Bankruptcy Act. Appellee thereupon assumed the subleases. In April, 1961, appellee's agent, Frederick Osmers, asked appellant to continue to manage the building until another agent could be engaged. Appellant offered to remain as agent on condition that he be paid the same compensation upon his dismissal as he was entitled to under his contract with Shoe Co. Osmers advised

appellant that he had no authority to agree to this condition and that he would be required to consult Phoenix's home office. Without receiving notice of Phoenix's decision on the matter, appellant continued to manage the premises, collect rents and retain 5% thereof until June, 1961, at which time he was dismissed.

In the court below the parties agreed that appellant was entitled to 5% of all rents collected by him. Appellant averred, however, that he was also entitled to a percentage of the rents to be collected following his dismissal in accordance with the terms of his offer to Osmers. Appellee denied this contention. The trial judge found for appellant but the exceptions of appellee to this finding were sustained and judgment entered for appellee. This appeal followed.

The right of a real estate broker to commissions is a matter of contract either express or implied. *Seligson v. Young*, 189 Pa. Superior Ct. 510, 512, 151 A. 2d 792, 794 (1959). Appellant argues that a contract was consummated incorporating his right to the additional commissions when with actual knowledge that his offer contained such a condition, appellee permitted him to act as its agent.[1] This contention is not sound. The failure of Phoenix to respond to appellant's offer until June did not constitute an acceptance

[1] The court below held that Osmers' reply to appellant's offer was a counteroffer which was accepted by appellant when he thereafter continued to manage the building, thus consummating a contract excluding appellant's condition with respect to compensation upon dismissal. Osmers' reply was not a counteroffer, for it in no way varied the terms of appellant's offer. It merely left that offer open for acceptance by appellee. The continued performance by appellant could not therefore constitute an acceptance for there was no offer open for him to accept. Hence, the continued performance by appellant did not consummate a contract. Indeed, appellant had the option of revoking his offer at any time until the approval of Phoenix was forthcoming.

thereof. Silence will not constitute acceptance of an offer in the absence of a duty to speak. *Howell v. Mc-Closkey,* 375 Pa. 100, 104-05, 99 A. 2d 610, 612 (1953); *Royal Ins. Co. v. Beatty,* 119 Pa. 6, 12 Atl. 607 (1888). Under the facts here present the appellee had no duty to speak. In the first place, appellant could not have reasonably believed that the silence of appellee constituted an acceptance of his terms. That this silence was not so construed is indicated by the fact that appellant continued to perform his duties as agent immediately following his conversation with Osmers. In addition, a month and a half was not an unreasonable length of time for consideration of appellant's proposal.

Appellee's subsequent dismissal of appellant constituted a rejection of appellant's still outstanding offer. Thus, no contract providing for the additional compensation was ever formed.[2]

Appellant also argues that when Phoenix assumed the subleases and retained appellant as agent, it assumed the obligation of Shoe Co. to pay his commissions. We cannot agree. *Heymann v. 4th Dickerson Building Association,* 113 Pa. Superior Ct. 26, 171 Atl. 482 (1934), cited by appellant is inapposite. There the lessor assigned to the broker the leases and the right to collect the rentals thereon as security for the commissions to which the broker was entitled. When the leased property was subsequently mortgaged, the lessor by letter requested the broker to deliver the leases to the mortgagee as security for the mortgage debt, with the understanding that the broker would continue to collect the rentals and receive the same compensation

---

[2] Appellant also argues that a section of the Recommended Schedule of Commissions and Charges of the Philadelphia Board of Realtors providing for the compensation he seeks would be incorporated as a custom into his contract with appellee. In view of appellee's express rejection of appellant's offer, this argument must necessarily fail.

as provided under his agreement with the lessor. When the mortgagee approved this arrangement by a writing endorsed on the letter, thereby assuming the personal obligation of the lessor, the broker delivered the leases to the mortgagee. It was held that foreclosure of the mortgage and the acquisition of title by the mortgagee discharged neither the leases nor the obligation assumed by the mortgagee to compensate the broker. In the case at bar, the obligation of Shoe Co. was never assumed by appellee and it therefore remained, as it had been, a purely personal obligation of the prime tenant. There is no rule of law which requires a landlord to assume the personal obligation of his prime tenant to a real estate broker in the absence of an agreement to the contrary.

Appellant having failed to establish any right to the additional compensation sought, the judgment of the court below is affirmed.

Judgment affirmed.