**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1891
_____

SPECIAL RISK INSURANCE SERVICES, INC.,
Appellant
v.

GLAXOSMITHKLINE, LLC, trading as GLAXOSMITHKLINE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-03002)
District Judge:  Honorable Nitza I. Quiñones Alejandro
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 21, 2023
_____

Before:  RESTREPO, PHIPPS, and ROTH, *Circuit Judges*.

(Opinion filed: May 25, 2023)

_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

        An insurance broker sued to recover commissions for policies that it brokered for

a pharmaceutical company with three insurance companies.  The insurance companies

paid the commissions on the policies for several years, until the pharmaceutical company

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

terminated the broker as its designated broker of record. After that, although the pharmaceutical company continued to use the policies, the insurance companies ceased paying commissions. Now, in seeking post-termination commissions, the broker sues the pharmaceutical company – not the insurance companies that previously paid the commissions.

The District Court rejected the broker's claims and entered summary judgment for the pharmaceutical company. Through this timely appeal of that final order, *see* 28 U.S.C. § 1291, the broker argues that its claims for breach of contract and unjust enrichment should have proceeded to trial. For the reasons below, on *de novo* review, we will affirm the judgment of the District Court.

## BACKGROUND

This dispute is between citizens of different states. Special Risk Insurance Services, Inc., ('Special Risk') is an insurance broker incorporated in Pennsylvania with a principal place of business in Blue Bell, Pennsylvania. GlaxoSmithKline, LLC, engaged primarily in the pharmaceutical business, is a citizen of Delaware. It is a limited liability company with a single member, a holding company that is incorporated in Delaware and has a principal place of business in Delaware. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 360 (3d Cir. 2013) (holding that GlaxoSmithKline Holdings is a citizen of Delaware); *see also Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

From 1991 through 2015, GlaxoSmithKline designated Special Risk as its group insurance broker of record. In that role, Special Risk helped negotiate and purchase group insurance policies for GlaxoSmithKline's employees. Those included GlaxoSmithKline's group life insurance policies with Liberty Mutual Insurance

2

Company and with ACE American Insurance Company as well as its disability insurance policy with Metropolitan Life Insurance Company.  For several years, these insurance companies paid Special Risk annual commissions – ranging from $850,000 to $1.2 million in total each year – on GlaxoSmithKline's policies.  *See* 40 Pa. Cons. Stat. §§ 310.1, 310.72–.73 (authorizing insurance entities to pay commissions to brokers).

In 2015, GlaxoSmithKline terminated Special Risk as its broker of record, but continued to use the group insurance policies that Special Risk had previously brokered. When GlaxoSmithKline terminated Special Risk, the three insurance companies stopped paying commissions to Special Risk – even though GlaxoSmithKline continued to use the policies.

To recover those commissions, Special Risk sued GlaxoSmithKline in the Court of Common Pleas, Philadelphia County.  Special Risk raised claims for breach of contract, unjust enrichment, promissory estoppel, and tortious interference with contractual relations.

In response, GlaxoSmithKline removed the action to the United States District Court for the Eastern District of Pennsylvania, *see* 28 U.S.C. § 1441, due to diversity jurisdiction, *see* 28 U.S.C. § 1332.  After discovery, GlaxoSmithKline moved for summary judgment.  In applying Pennsylvania law, the District Court granted summary judgment to GlaxoSmithKline on every claim.  *See Special Risk Ins. Servs., Inc. v. GlaxoSmithKline, LLC*, 2022 WL 1093129, at *4–7 (E.D. Pa. Apr. 12, 2022).  In this appeal, Special Risk disputes the rejection of its claims for breach of contract and unjust enrichment.

## DISCUSSION

**A.**  **The District Court Did Not Err in Granting Summary Judgment to GlaxoSmithKline on the Claim for Breach of Contract.**

The District Court did not find evidence of either an express or an implied-in-fact contract between Special Risk and GlaxoSmithKline for the payment of commissions. *See id.* at \*5 (explaining that there is "no evidence" that GlaxoSmithKline "agreed— either orally, in writing, or by any inference" to compensate Special Risk for lost commissions); *see also Solis-Cohen v. Phoenix Mut. Life Ins. Co.*, 198 A.2d 554, 555–56 (Pa. 1964) (explaining that any right to commissions "is a matter of contract either express or implied"); 3 Steven Plitt et al., *Couch on Insurance* § 46:76 (3d ed. 2022) ("The insured . . . is not liable to compensate an agent or broker unless there is an express or implied agreement to pay compensation."). And on that basis, it rejected Special Risk's breach-of-contract claim. *See Special Risk*, 2022 WL 1093129, at \*5.

On appeal, Special Risk does not dispute the District Court's ruling that there was no express contract for a commission. Instead, Special Risk argues that GlaxoSmithKline – by designating Special Risk as its broker of record – impliedly promised continuing commissions on any brokered contracts to Special Risk. But Special Risk does not make a sufficient showing of such an implied promise. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining that summary judgment properly issues where "the nonmoving party has failed to make a sufficient showing on an essential element of her case"); *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 645 (3d Cir. 1998) (affirming grant of summary judgment on implied-in-fact contract claim for want of a triable issue of material fact). The record does not indicate that GlaxoSmithKline ever paid commissions to Special Risk – not even when Special Risk was its broker of record. Nor is there any evidence of an industry custom or practice of implying such a promise.

4

Without such facts, Special Risk argues that, as a matter of law, it has a vested right to a brokerage commission upon the writing of a policy. Even if that is a correct statement of Pennsylvania law (an issue not addressed here), it would concern only the timing of when a commission becomes due. And for Special Risk to succeed on the law alone, it needs a legal rule that an entity, by designating a broker as its insurance broker of record, is liable for that broker's commissions. Yet Special Risk offers nothing in that respect. *Cf.* 40 Pa. Cons. Stat. §§ 310.1, 310.72–.73 (authorizing the *insurer* to pay commissions to a broker); *Solis-Cohen*, 198 A.2d at 554–56 (holding that a real estate broker could not recover commissions from a landlord, where the landlord's tenant – but not the landlord – had promised the commissions). Thus, the District Court did not err in rejecting Special Risk's claim for breach of an implied contract.

**B. The District Court Did Not Err in Rejecting Special Risk's Claim for Unjust Enrichment.**

To succeed on its alternative claim for unjust enrichment, Special Risk must demonstrate that GlaxoSmithKline knowingly benefitted from the insurance companies' non-payment of the commissions such that GlaxoSmithKline's retention of such a benefit would be not just unfair, but unconscionable. *See Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) ("To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'" (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. Ct. 1973))); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018) (articulating three elements for an unjust enrichment claim); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (same). Here, GlaxoSmithKline has knowingly benefitted through its

5

retention of the group insurance policies brokered by Special Risk. But that is not sufficiently unjust under these circumstances. *See State Farm Mut. Auto. Ins. Co. v. Jim Bowe & Sons, Inc.*, 539 A.2d 391, 393 (Pa. Super. Ct. 1988) ("[T]he most significant requirement for recovery is that the enrichment is unjust."); *cf.* Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d (2011) ("The third element . . . referring to 'circumstances making it inequitable for the defendant to retain the benefit,' incorporates the whole of the question presented, making the rest of the formula superfluous."). Special Risk already received millions of dollars in commissions for several years in return for brokering those policies. And it was the insurance carriers – not GlaxoSmithKline as the purchaser of the group insurance policies – who paid the commissions for those policies. Also, Special Risk, in negotiating with GlaxoSmithKline to be its broker of record, could have insisted that GlaxoSmithKline be liable for its commissions, but Special Risk did not do so. *See* Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. d (explaining that no claim for unjust enrichment exists when "the claimant neglects an opportunity to contract" for compensation for the benefit conferred). Thus, the degree of unfairness here does not rise to the level required for an unjust enrichment claim.

* * *

For the foregoing reasons, the judgment of the District Court will be affirmed.